# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2016 Term

_____

No. 15-0641

_____

**FILED**
**October 12, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent

v.

**SUMMER McDANIEL,**
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Hardy County
The Honorable Andrew N. Frye, Jr., Judge,
by Special Appointment
Case. No. 14-F-41

**AFFIRMED**
_____

Submitted October 5, 2016
Filed: October 12, 2016

Jonie E. Nelson, Esq.
Nelson Legal Services, LC
Petersburg, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Shannon Frederick Kiser, Esq.
Assistant Attorney General
Gordon Lee Mowen, II
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "Other criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." Syl. pt. 1, *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978).

2. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999).

3. "'[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)." Syl. pt. 4, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992).

4. "Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule

403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. pt. 10, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

5. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

**Chief Justice Ketchum**:

This case is before this Court upon the appeal of Summer McDaniel ("McDaniel") from the June 23, 2015, order of the Circuit Court of Hardy County imposing sentence upon her conviction of involuntary manslaughter, concealment of a deceased human body and other offenses, following a jury trial, relating to the death of her twenty-six-day-old infant son ("infant").

The State maintained that McDaniel and Joseph Christy ("Christy"), the infant's putative father, left the State of Colorado with the infant and four other children, where child protective proceedings were pending, and stopped at a campsite in Hardy County. At the campsite, knowing the infant was sick, neither McDaniel nor Christy made any attempt to get medical help, and the infant, suffering from significant weight loss, died of malnutrition and dehydration. The infant was then buried in a concealed, shallow grave near the campsite.

McDaniel, emphasizing that the autopsy found the infant's cause of death to be undetermined, raises a number of assignments of error, particularly relating to the State's evidence of the events in Colorado. McDaniel asks this Court to set her convictions aside and grant her a new trial.

Upon review, this Court is of the opinion that McDaniel's assignments of error are without merit, and we affirm her convictions regarding the death of the infant. Moreover, we affirm the sentencing order entered in the Circuit Court of Hardy County on June 23, 2015.

## I. Factual Background

On June 9, 2014, McDaniel gave birth to an infant son in the State of Colorado. The infant was McDaniel's fifth child. A toxicology report concerning the birth revealed the presence of illicit drugs in both McDaniel and the infant. As later described by the Colorado Department of Human Services, McDaniel tested positive for methamphetamine, and the infant tested positive for amphetamine, thus placing the welfare of the infant at risk.[1]

While in the hospital, McDaniel was served by a caseworker for the Colorado Department of Human Services with a Notice of Preliminary Protective Proceeding. The Notice concerned the infant and McDaniel's other four children, ages eleven and under, and directed McDaniel to (1) comply with family treatment drug court services and recommendations, (2) comply with all recommendations made by the Colorado Department

---

[1] The terms "methamphetamine" and "amphetamine" were used interchangeably in the proceedings below. While those substances are related, they are not synonymous. *See Dorland's Illustrated Medical Dictionary* (31st ed. 2007) (indicating that methamphetamine is closely related chemically, and has similar actions, to amphetamine). *See also Baer v. State*, 942 N.E.2d 80 (Ind. 2011) (citing toxicologist's testimony that amphetamine is methamphetamine's break-down product).

2

of Human Services and (3) notify the Department of any changes in address or telephone number. Custody of the children was to remain with McDaniel, subject to the Department's protective supervision.

On June 17, 2014, the Colorado Department of Human Services filed a neglect petition against McDaniel and Christy with regard to all five children. The petition alleged, *inter alia*, that McDaniel has a history of substance abuse which places the children at risk.[2] In the meantime, McDaniel, Christy and the children left Colorado and drove to West Virginia. They arrived at a campsite in the George Washington National Forest in Hardy County in early July 2014.

On July 5, 2014, a Jeep, reported as stolen, was pursued and stopped by police officers on Interstate 79 near Morgantown, West Virginia. Christy was driving the Jeep, and McDaniel and four children were passengers. The children were unrestrained by seat belts or child seats. Christy, identified as a fugitive from justice, was taken into custody. Both Christy and McDaniel were charged with child neglect. According to the police report, Christy told the police that he had "just lost and buried his son the previous day [July 4, 2014]." Christy stated that the four children were sleeping in a tent at the campsite while he,

---

[2] While in Colorado, McDaniel admitted she was breast feeding the infant even though she was advised not to by the hospital.

McDaniel and the infant slept in the Jeep. Christy maintained that, at some point during the night, their two-year-old child climbed into the Jeep and unintentionally slept on top of the infant, resulting in the infant's death. The infant was twenty-six days old.

Later, on July 5, 2014, Christy and McDaniel were transported to the campsite in the George Washington National Forest where they guided police officers to the location where the infant was buried.

## II. Procedural Background

On October 6, 2014, the Hardy County grand jury returned an indictment charging Christy and McDaniel jointly with the following offenses relating to the death of the infant: count 1, involuntary manslaughter; count 2, child neglect resulting in death; count 3, conspiracy to commit child neglect resulting in death; count 4, concealment of a deceased human body; count 5, conspiracy to conceal a deceased human body; and count 6, child neglect creating a substantial risk of death.[3]

---

[3] Count 3 of the indictment, charging conspiracy to commit child neglect resulting in death, was dismissed with prejudice prior to McDaniel's trial.

Between November 2014 and January 2015, the State filed four notices of its intent to use Rule 404(b) evidence at trial.[4] All the evidence noticed concerned the events in Colorado and consisted of hospital records; the toxicology report; test results showing the presence of methamphetamine and amphetamine in McDaniel and the infant at the time of the infant's birth; McDaniel's lack of prenatal care regarding the infant; and documents concerning the Preliminary Protective Proceeding which outlined McDaniel's responsibilities pursuant to the authority of the Colorado Department of Human Services.

Significantly, the State's third notice of intent to use Rule 404(b) evidence, which concerned the hospital records and lack of prenatal care, stated: "The State does not believe this evidence is really 404(b) evidence but that it is rather 'res gestae' but the State is disclosing that it plans to use this evidence to give the [defendants] the opportunity to object." All four notices of intent to use Rule 404(b) evidence stated that the purpose of the evidence was to "tell the complete story."

_____

[4] Rule 404(b)(2) of the *West Virginia Rules of Evidence* states, in part:

> Any party seeking the admission of evidence pursuant to this subsection must:
> (A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and
> (B) do so before trial - or during trial if the court, for good cause, excuses lack of pretrial notice.

5

The circuit court conducted two pre-trial hearings concerning the Rule 404(b) evidence. The first hearing was conducted in December 2014 followed by an order entered on December 29, 2014. The circuit court concluded that the evidence was admissible as part of the *res gestae* and also admissible under Rule 404(b). The court found that the hospital records and toxicology report were "credible and believable." The presence of the illicit drugs was determined to be part of the *res gestae* as "inextricably intertwined with the events as they allegedly occurred."

In the alternative, the presence of the illicit drugs was found admissible under Rule 404(b), *i.e.*, the "act" occurred; was committed by McDaniel; was relevant; was close in time to the incidents giving rise to the indictment; and the probative value thereof outweighed the prejudicial effect. On the latter point, the circuit court noted that the inflammatory effect of testimony concerning methamphetamines and amphetamines would be mitigated by a limiting instruction.

In January 2015, a second Rule 404(b) hearing was conducted followed by an order entered on January 15, 2015. The circuit court concluded that the evidence would be admissible "as tending to prove the Defendant's neglect of the child from before birth until the child's death."

6

McDaniel's trial began on January 27, 2015. Shortly before McDaniel's trial Christy entered guilty pleas to four counts of the indictment. The counts to which he pled guilty are not set forth in the appendix record before this Court. The State's theory at trial was that McDaniel and Christy, ignoring the services and recommendations of the Colorado authorities regarding the infant, left Colorado and ultimately arrived at a campsite in the George Washington National Forest with the infant and the other four children. There were little or no baby supplies for the infant, such as baby bottles, diaper bags, powder, or diaper rash cream. On July 4, 2014, at the campsite, or prior thereto, McDaniel was aware that the infant was sick because the infant looked pale and was vomiting. However, neither McDaniel nor Christy made any attempt to get medical help. The infant, twenty-six days old and suffering from substantial weight loss, died of malnutrition and dehydration. The deceased infant was buried in a concealed, shallow grave in the National Forest. The location of the deceased infant was not revealed to law enforcement until after Christy and McDaniel, in a stolen vehicle, were pursued and stopped on Interstate 79 on July 5, 2014.[5]

---

[5] The evidence of the State revealed that the infant weighed six pounds, fifteen ounces, at birth and six pounds postmortem. The body was found prior to decomposition. The State maintained that after twenty-six days the infant should have weighed approximately eight pounds.

Although McDaniel did not testify, her defense at trial rested largely on the autopsy report which stated that the infant's death was undetermined and that the infant was drug free. McDaniel presented evidence that the other four children were normal and well-fed. Moreover, although her counsel described Christy as controlling and as "the guy that entered the plea,"[6] defense counsel also told the jury that Christy said that the two-year-old unintentionally slept on the infant on July 4, 2014, resulting in the infant's death. Finally, the defense asserted that, although McDaniel did not initially disclose the infant's grave site, she then cooperated with police and assisted in locating the infant's grave, within forty-eight hours of the infant's death.

At the conclusion of the trial, the jury found McDaniel guilty on all counts. Thereafter, the circuit court denied McDaniel's combined motion for directed verdicts of acquittal or for a new trial. On June 23, 2015, the circuit court entered a final order directing McDaniel to serve consecutive penitentiary sentences of three to fifteen years for child neglect resulting in death; one to five years for concealment of a deceased human body; one to five years for conspiracy to conceal a deceased human body; and one to five years for child neglect creating a substantial risk of death. In addition, the circuit court directed McDaniel

---

[6] Defense counsel stated during closing arguments: "Who is Mr. Christy? Well, first of all, he's the guy that entered the plea. The culprit has entered a plea. He's going to be punished and he's gone."

8

to serve one year in jail for the involuntary manslaughter conviction, to run concurrently with the other sentences. McDaniel's appeal to this Court followed.

### III. Standards of Review

McDaniel's assignments of error raise various legal principles and differing standards of review. Therefore, this Court will address those principles and standards as they pertain to each assignment of error. However, we note the following general standard of review which we have applied in criminal cases: "'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syl. pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. pt. 1, *State v. Keesecker*, 222 W.Va. 139, 663 S.E.2d 593 (2008). *Accord* syl. pt. 1, *State v. Hawk*, 222 W.Va. 248, 664 S.E.2d 133 (2008).

### IV. Discussion

#### A. Other Act Evidence and Rule 404(b)

All of the evidence in relation to this assignment of error concerned the events in Colorado and consisted of hospital records; the toxicology report; the presence of methamphetamine and amphetamine in McDaniel and the infant; McDaniel's lack of prenatal care; and the Preliminary Protective Proceeding pursued by the Colorado Department of

Human Services. That evidence principally arose between June 9, 2014, when the infant was born, and the time Christy and McDaniel left Colorado for West Virginia in late June or early July 2014.

McDaniel contends that the circuit court committed error by admitting her "prior bad acts that occurred in the State of Colorado" under Rule 404(b) of the *West Virginia Rules of Evidence*, without conducting a balancing test, without making the required findings and without concluding that the evidence was admissible for a proper purpose. In particular, McDaniel asserts that the circuit court committed error in allowing evidence that McDaniel and the infant tested positive for the illicit drugs at the time of the infant's birth, since the infant experienced no withdrawal symptoms and was found to be drug free at the time of death.

Rule 404(b) states in part:

> (b) *Crimes, wrongs, or other acts.* -
> (1) *Prohibited uses.* - Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) *Permitted uses; notice required.* - This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In West Virginia, the leading case on Rule 404(b) is *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), which requires the trial court to conduct an *in camera* hearing

when Rule 404(b) evidence is going to be offered at trial. Syllabus point 2 of *McGinnis* states that, at the conclusion of the *in camera* hearing,

> the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

*Accord* syl. pt. 1, *State v. Nelson*, 221 W.Va. 327, 655 S.E.2d 73 (2007). As the *McGinnis* opinion states, this Court reviews a circuit court's decision "to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." 193 W.Va. at 159, 455 S.E.2d at 528. *Accord State v. Williams*, 198 W.Va. 274, 279, 480 S.E.2d 162, 167 (1996).

In the present case, the circuit court conducted two pre-trial hearings concerning the State's Rule 404(b) evidence. The presence of the illicit drugs was found admissible under Rule 404(b) upon the basis that (1) the "act" occurred, (2) was committed by McDaniel, (3) was relevant, (4) was close in time to the incidents giving rise to the indictment and (5) the probative value thereof outweighed the prejudicial effect. The circuit court noted that the

11

inflammatory effect of testimony concerning the illicit drugs would be mitigated by a limiting instruction. During McDaniel's trial, the circuit court gave the jury a limiting instruction during the State's case-in-chief and again during the charge to the jury.[7]

Nevertheless, the circuit court expressed an alternate ground for admitting the State's evidence, *i.e.*, that the evidence was admissible as part of the *res gestae* and also admissible under Rule 404(b). Consequently, with regard to the illicit drugs, the circuit court found that the State's evidence was "intrinsic evidence which is inextricably intertwined with the events as they allegedly occurred as to be part and parcel of the *res gestae*. In other words, it's part of the act itself." The State had raised the alternative ground of intrinsic evidence versus Rule 404(b) evidence prior to trial. In fact, out of the jury's presence, the prosecutor stated that he believed the evidence to be part of the *res gestae* and had formally noticed the evidence to the defense under Rule 404(b) "just to exercise caution."

---

[7] The circuit court gave the following instruction during the charge to the jury which was similar to the instruction given during the State's case-in-chief:

> The Court has heretofore instructed you that all the witnesses from Colorado [were] allowed to be presented to show you the whole picture in this case. You should not consider this evidence as showing guilt or innocence. The evidence was admitted for the specific purpose of showing the entire picture.

This Court is of the opinion that the other act evidence emanating from Colorado, *i.e.*, the hospital records, the toxicology report, the presence of the illicit drugs at the time of birth, the lack of prenatal care and the Colorado neglect proceedings, constituted intrinsic or *res gestae* evidence, not subject to the same analysis as that required under Rule 404(b). Moreover, this Court concludes that the value of the evidence, as well as the State's need to present it to complete the story culminating in the infant's death, outweighed the prejudicial impact of the evidence at trial, particularly in view of the limiting instructions given to the jury. As explained in Vol. 1, Louis J. Palmer, Jr., Justice Robin Jean Davis, Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 404.04[5][a] (6th ed. 2015):

> Rule 404(b) only applies to limit the admissibility of evidence of extrinsic acts. Intrinsic evidence, on the other hand, is generally admissible so that the jury may evaluate all the circumstances under which the defendant acted. That is, intrinsic evidence of a crime is admissible without analysis pursuant to Rule 404(b). * * *
>
> Other bad act evidence is intrinsic and admissible if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) inextricably intertwined with the evidence regarding the charged offense, or (3) necessary to complete the story of the crime. This is to say that evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. If the proffer fits into the intrinsic category, evidence of other crimes should not be suppressed when those facts come in as part and parcel of the proof charged in the indictment. Regardless of whether the evidence is intrinsic or extrinsic to the charged crime, it must still pass the Rule 403 test to ensure that its probative value is not substantially outweighed by the danger of unfair prejudice.

13

Syllabus point 1 of *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978), holds: "Other criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." *Accord* syl. pt. 8, *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004); syl. pt. 4, *State v. Hager*, 204 W.Va. 28, 511 S.E.2d 139 (1998); syl. pt. 2, *State v. McGhee*, 193 W.Va. 164, 455 S.E.2d 533 (1995). *See State v. McKinley*, 234 W.Va. 143, 155, 764 S.E.2d 303, 315 (2014) ("Events, declarations and circumstances which are near in time, causally connected with and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." (citation omitted)).

Here, the infant lived only twenty-six days, and the evidence in question was complete within that period by the time McDaniel and Christy left Colorado for West Virginia. The State presented the evidence at McDaniel's trial through the testimony of three Colorado witnesses: a pediatrician, a medical social worker, and a child protection caseworker from the Colorado Department of Human Services. Those witnesses provided the underlying fabric or context regarding the events resulting in the indictment.

14

In presenting the evidence in question, the witnesses indicated that McDaniel's actions in Colorado were irresponsible, rather than against the law. For example, McDaniel's lack of prenatal care was related to the hospital's concern that McDaniel had a history of deliveries by Caesarean section. Moreover, after the delivery of the infant McDaniel left Colorado without obtaining the follow-up care and services, and without reporting where the family had gone as directed by the Colorado Department of Human Services. At that time, a neglect petition had been filed against McDaniel and Christy with regard to all five children. The appendix record before this Court shows that the actions taken by authorities in Colorado and McDaniel's response thereto were triggered by the presence of the methamphetamine and amphetamine at the time of the infant's birth. According to the State, all of those circumstances contributed to the family's leaving Colorado and ultimately arriving at the campsite in West Virginia.

Accordingly, this Court holds that the evidence in question was intrinsic in nature as part of the *res gestae* underlying the allegations in the indictment. The admission of the evidence was within the circuit court's discretion. Therefore, this assignment is without merit.[8]

---

[8] The circumstances herein are different from those in *State v. Louk*, 237 W.Va. 200, 786 S.E.2d 219 (2016), where the defendant mother was charged with the prenatal ingestion of methamphetamine directly resulting in the death of her child. The child, "essentially brain dead," died in the hospital after eleven days. In the current matter, the infant, twenty-six-days-old, was drug free at death and had been released to McDaniel by

15

## B. Concealment of a Deceased Human Body

Pursuant to subsection (a) of *W.Va. Code*, 61-2-5a [2006], any person who, by any means, knowingly and willfully conceals, attempts to conceal, or who otherwise aids and abets any person to conceal, a deceased human body (where death occurred as a result of criminal activity) is guilty of a felony. Subsection (b) of *W.Va. Code*, 61-2-5a [2006], states:

> It shall be a complete defense in a prosecution pursuant to subsection (a) of this section that the defendant affirmatively brought to the attention of law enforcement within forty-eight hours of concealing the body and prior to being contacted regarding the death by law enforcement the existence and location of the concealed deceased human body.

McDaniel contends that her conviction under *W.Va. Code*, 61-2-5a [2006], and her related conspiracy conviction, should be set aside because she and Christy disclosed the infant's death and burial prior to any knowledge law enforcement had of the infant's existence and because it is undisputed that the precise location of the infant's grave was made known to law enforcement within forty-eight hours of the infant's death.[9]

---

the hospital in Colorado, subject to the supervision of the Colorado Department of Human Services. McDaniel maintained that the infant never exhibited withdrawal symptoms.

[9] McDaniel also asserts that she could only assist Christy in directing the police to the infant's grave because she had not participated in the infant's burial, and, consequently, the evidence was unclear whether she was aware of the grave's precise location. However, inasmuch as the testimony at trial revealed that both McDaniel and Christy escorted the police through the wooded area toward the grave, McDaniel's assertion was for the jury to resolve.

The State, however, emphasizes the language of *W.Va. Code*, 61-2-5a [2006], that the concealment must be "affirmatively brought to the attention of law enforcement." According to the State, that was not done in this case since the actions of McDaniel and Christy were evasive, even though the infant was located within forty-eight hours. Therefore, the "complete defense" provision of the statute did not apply, and the charge of concealment was properly a question for the jury.

The State's position is correct that the complete defense provision under subsection (b) of *W.Va. Code*, 61-2-5a [2006], is dependant upon "affirmatively" bringing the concealment of the deceased human body to the attention of law enforcement. As this Court made clear in syllabus point 3 of *Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999): "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." *Accord* syl. pt. 3, *Jackson v. Belcher*, 232 W.Va. 513, 753 S.E.2d 11 (2013).

Here, neither McDaniel nor Christy reported the death and burial of the infant until their vehicle was stopped the next day on Interstate 79 after eluding the police for ten miles. The vehicle was reported as stolen. Although Christy then told the police that he had just lost and buried his son, McDaniel initially told the police that the infant died in Virginia. Officer Montague of the Morgantown Police Department testified: "I asked [McDaniel] from what

17

and she stated SIDS.  I asked her where this occurred, in what hospital.  She stated in Virginia.  At that point she refused to say anything else."

In addition, State Police Trooper Hartman testified:

> I've checked with local area dispatches in Virginia and West Virginia. There's been no call logged for any type of anything in reference to this investigation whereas a baby was sick or a baby had died or anything to that manner.  At every opportunity it seems that the subjects had opportunity to speak with police or seek out police but they only did so after they were caught fleeing from the police.  That was the only time that they did speak with the police about the death of the baby.

Although McDaniel later assisted the police in locating the infant's grave, the circuit court concluded during post-trial proceedings that McDaniel did not take affirmative action within the meaning of *W.Va. Code*, 61-2-5a [2006].  This Court agrees with that conclusion and finds this assignment of error to be without merit.

### C. Merger of the Neglect Convictions

The indictment charged McDaniel, in count 2, with child neglect resulting in death and, in count 6, with child neglect creating a substantial risk of death.  The jury found McDaniel guilty of both regarding the infant. McDaniel contends that the two counts should

have been merged into a single offense and that the circuit court's failure to do so violated her constitutional protection against double jeopardy.[10]

The merged issue was raised by the defense throughout the proceedings below, and relief was ultimately denied by the circuit court pursuant to the post-trial order entered on June 23, 2015. McDaniel asserts that child neglect creating a substantial risk of death is a lesser included offense of child neglect resulting in death, since the infant died in this case.

The offense of child neglect resulting in death, as charged in the indictment, is found in *W.Va. Code*, 61-8D-4a(a) [1997], and states that if any parent "shall neglect a child under his or her care, custody or control and by such neglect cause the death of said child," then such parent shall be guilty of a felony.

The offense of child neglect creating a substantial risk of death, as charged in the indictment, is found in *W.Va. Code*, 61-8D-4(c) [2014], and states that if a parent "*grossly neglects a child and by that gross neglect creates a substantial risk of death or serious bodily*

_____

[10] The trial transcript indicates that count 6 was designated as count 5 for purposes of jury deliberations in view of the pre-trial dismissal of count 3. For purposes of this opinion and consistent with the indictment, we will continue to refer to count 6 as charging McDaniel with child neglect creating a substantial risk of death. *See* n. 3, *supra*.

*injury, as serious bodily injury is defined in section one, article eight-b of this chapter*,"
(emphasis added) then the parent is guilty of a felony.

The latter statute has several components. Subsections (a), (b) and (c) of *W.Va. Code*, 61-8D-4 [2014], set forth increasing levels of culpability, *i.e.*, in subsection (a), neglect causing the child "bodily injury;" in subsection (b), neglect causing the child "serious bodily injury;" and in subsection (c), gross neglect, creating "a substantial risk of death or serious bodily injury."

The terms "bodily injury" and "serious bodily injury" are separately defined in *W.Va. Code*, 61-8B-1 [2007], as follows:

> "Bodily injury" means substantial physical pain, illness or any impairment of physical condition.
> "Serious bodily injury" means bodily injury which creates a substantial risk of death, which causes serious or prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.

Syllabus point 4 of *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992), holds: "'[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger v.*

20

*United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)." *Accord* syl. pt. 4, *State v. Wright*, 200 W.Va. 549, 490 S.E.2d 636 (1997).  In addition, syllabus point 5 of *Gill* states, in part, that the *Blockburger* test "is a rule of statutory construction.  The rule is not controlling where there is a clear indication of contrary legislative intent." *Accord* syl. pt. 6, *Mirandy v. Smith*, 237 W.Va. 363, 787 S.E.2d 634 (2016).

Here, *W.Va. Code*, 61-8D-4a(a) [1997], which McDaniel considers the primary statute, is based on "neglect" causing the death of a child.  In contrast, the other statute, *W.Va. Code*, 61-8D-4(c) [2014], differentiates neglect causing bodily injury; neglect causing serious bodily injury; and gross neglect creating a substantial risk of death or serious bodily injury.  Thus, the latter type of neglect, for which McDaniel was charged, includes the additional component "gross neglect" which does not appear as an element of proof under *W.Va. Code*, 61-8D-4a(a) [1997].  Moreover, the legislative definition of "serious bodily injury," set forth above, places "substantial risk of death" together with "serious or prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ."[11]  In short, *W.Va. Code*, 61-8D-4(c) [2014], is a more complex statute than *W.Va. Code*, 61-8D-4a(a) [1997], and contains provisions set forth by the Legislature which do not exist in *W.Va. Code*, 61-8D-4a(a) [1997].  Therefore, under *Gill*

---

[11] The indictment, in count 6, charged McDaniel under subsection (c) but omitted the phrase "or serious bodily injury."  Nevertheless, the circuit court's instructions to the jury included the definition of "serious bodily injury."

21

and *Blockburger*, each statute "requires proof of a fact which the other does not," and this

Court finds no violation of McDaniel's constitutional protection against double jeopardy.[12]

---

[12] *Blockburger* was cited by the Supreme Court of Nevada in *Geddings v. State*, No. 61849, 2016 WL 771006 (Nev., Feb. 25, 2016) (unpublished disposition), wherein the court held that convictions of one count of second-degree felony murder by child neglect and one count of child neglect with substantial bodily harm did not violate the Double Jeopardy Clause. The Nevada court stated:

> Here, the elements of child neglect are present in both counts. However, child neglect with substantial bodily harm also requires that the victim suffer either "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ," or "[p]rolonged physical pain." NRS 0.060(1)-(2). In contrast, felony murder by child neglect does not require any of those elements, but instead requires that the underlying felony be "inherently dangerous" and that there be "an immediate and causal relationship between the felonious conduct . . . and the death of the [child]," which are not elements of child neglect with substantial bodily harm. * * * Therefore, because each offense contains an element that the other does not, we conclude in this case that double jeopardy does not preclude a charge of second-degree felony murder by child neglect and a charge of child neglect with substantial bodily harm.

*See* Rule 36(c)(3) of the *Nevada Rules of Appellate Procedure* which states that, after January 1, 2016, an unpublished disposition may be cited for its persuasive value. *See also State v. Myers*, 216 W.Va. 120, 126, n. 10, 602 S.E.2d 796, 802, n. 10 (2004), *cert. denied*, 543 U.S. 1075 (2005) (Although this Court does not ordinarily cite unpublished decisions, such a disposition may be cited where there is a "dearth of published opinions" dealing with the issue at hand.).

## D. Remaining Assignments of Error

### The Testinomy of R. S.

During the trial, the State called R. S., McDaniel's twelve-year-old son. Just before R. S. took the stand, the State announced the likelihood that it would seek to impeach R. S.'s testimony with a prior inconsistent statement.

On direct examination by the State at trial, R. S. testified that the infant looked pale and was sick. In addition, R. S. indicated that the infant was sick "a few days before going to the campground." However, R. S. denied seeing the infant vomit and testified that McDaniel did not attempt to keep the infant away from the other children. R. S. was then cross-examined by McDaniel's counsel who brought out facts about the children's living conditions and the stop by the police on Interstate 79. During cross-examination, R. S. testified that he had seen the infant's grave.

At that point, the State asked the circuit court for permission to play for the jury a fifty-minute videotaped interview of R. S. conducted on July 9, 2014. The interview took place at the Monongalia County Child Advocacy Center. In support, the State cited *West Virginia Rule of Evidence* 607 which states that the credibility of a witness may be impeached by any party, "including the party calling the witness," and *West Virginia Rule of Evidence* 613 concerning a witness's prior statements. The State then called Kristin Kelly,

a therapist and forensic interviewer who conducted the videotaped interview. The video was played for the jury over McDaniel's objection during Kelly's testimony. Contrary to his direct testimony, R. S. stated during the video that the infant was throwing up and that McDaniel kept the infant away from the other children because the infant was sick.

McDaniel contends that the State's impeachment of R. S. was improper because the State made no attempt to refresh R. S.'s recollection on the stand prior to playing the videotaped interview. In addition, McDaniel contends that the playing of the video, fifty minutes in length, was improper because it allowed information to enter the trial that would not have otherwise been admitted.

This Court has carefully reviewed R. S.'s trial testimony and the videotaped interview, and we conclude that the errors asserted by McDaniel were harmless. At trial and in the video, R. S. confirmed that the infant looked pale and was sick. However, R. S. made no statements about the infant's cause of death. When asked during the video what happened to the infant, R. S. stated that the question should be referred to Mom and Dad. Nevertheless, R. S. said during the videotaped interview that one of his siblings sometimes slept in the vehicle and not in the tent, a statement helpful to McDaniel's defense at trial. Most of the fifty-minute video concerned the children's living conditions from the time the family left

Colorado until Christy and McDaniel were taken into custody in West Virginia on July 5, 2014.

The discrepancies between R. S.'s trial testimony and the videotaped interview were limited to whether the infant had vomited and whether McDaniel had kept the infant away from the other children. The remainder of the video was largely irrelevant. Consequently, any flaw concerning the impeachment of R. S. did not rise to the level of reversible error. *See* syl. pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904 (1980) (discussing the harmless error test, where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial). *Accord* syl. pt. 6, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

**The Photographs of the Infant**

McDaniel contends that the circuit court committed error by admitting enlarged, color photographs of the infant's corpse. McDaniel asserts that the photographs were gruesome and held no evidentiary value since the defense had stipulated to the infant's death. The State's responds that it

> sought to admit photographs of the deceased infant's burial site, and the manner in which the infant was buried. The best evidence for doing so was the photographs. While the photographs showed impression marks on the deceased infant's skin from being buried under six inches of dirt and a large rock, the photographs contained no other gruesome attributes.

25

Syllabus point 8 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), states: "The admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403 of the West Virginia Rules of Evidence." *Accord* syl. pt. 5, *State v. Waldron*, 218 W.Va. 450, 624 S.E.2d 887 (2005). Rule 401 concerns the test for relevant evidence and Rule 402 concerns the general admissibility of relevant evidence. Rule 403 addresses the exclusion of relevant evidence for prejudice, confusion, waste of time, or other reasons. Syllabus point 10 of *Derr* explains:

Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

*Accord* syl. pt. 2, *State v. Copen*, 211 W.Va. 501, 566 S.E.2d 638 (2002).

Here, the circuit court admitted the photographs on the basis that they were part of the evidence of the offenses under the indictment and that the photographs are not gruesome. We agree. There are no autopsy photographs of the infant in the appendix record. The photographs in question show the infant's body intact and in relation to the shallow grave.

26

Although the infant's body appears somewhat brused, there is nothing in the photographs which could reasonably lead to the conclusion that the photographs are gruesome and should have been excluded as a matter of law. The ruling of the circuit court was within the parameters of sound discretion. Therefore, this assignment of error is without merit.

## The Comments of the Prosecutor

Immediately before McDaniel's trial, Christy entered guilty pleas to four counts of the indictment. The counts to which he pled guilty are not set forth in the appendix record before this Court. During opening statements and in closing argument, the prosecutor told the jury that Christy had entered the pleas. Christy did not testify at McDaniel's trial. In addition, the prosecutor, during closing argument, brought up Hardy County community standards and referred to Christy and McDaniel as meth-heads and baby killers. McDaniel contends that, in making the comments, the prosecutor abandoned his quasi-judicial role and became a partisan eager to convict. *See* syl. pt. 3, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). McDaniel asserts that the comments warrant a new trial.

In *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977), this Court awarded a new trial where the prosecutor, during opening statements, said that a co-conspirator had pled guilty to the same offense in which the appellant was involved. As stated in 75 Am. Jur. 2d *Trial* § 439 (2007): "Unless the trial court takes action to eliminate the harmful effect of a

27

prosecuting attorney's remarks in the opening statement to the jury that another defendant has been convicted or has pleaded guilty, such remarks may be considered prejudicial so as to require reversal of the conviction."

However, in the present case no contemporaneous objection was made by McDaniel either during opening statements or closing argument to the prosecutor's comments about Christy's guilty pleas, and no action was taken by the circuit court in that regard. Furthermore, McDaniel did not object to the prosecutor's reference to community standards. McDaniel's petition for appeal states: "While Defense Counsel did not object to the Prosecuting Attorney's comments about the community standard, Defense Counsel's failure to object constituted plain error, as the comments from the Prosecuting Attorney were improper."

McDaniel's assertion of plain error is unpersuasive. During opening statements, McDaniel's counsel targeted Christy by telling the jury that he was abusive, that he had been in jail in Colorado, that he had stolen a Jeep and that, against McDaniel's wishes, Christy insisted that the family leave Colorado in order to avoid his probation problems and court proceedings concerning the children. In that context, the alleged error regarding the prosecutor's comments is less than "plain" within the meaning of this Court's plain error doctrine. *See* W.Va. R. Crim. P. 52(b); syl. pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d

114 (1995).  Moreover, McDaniel's combined motion for directed verdicts of acquittal or for a new trial merely alleged that the State had violated its quasi-judicial role, without citing any of the prosecutor's comments.   Later, at the post-trial hearing, McDaniel again referred to the State's quasi-judicial role, but without elaboration.  This assignment of error does not warrant the granting of a new trial.

**The Sufficiency of the Evidence**

McDaniel contends that the evidence at trial was insufficient to sustain the verdicts of the jury.  Syllabus point 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), holds:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden.  An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution.  The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt.  Credibility determinations are for a jury and not an appellate court.  Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.  To the extent that our prior cases are inconsistent, they are expressly overruled.

*Accord* syl. pt. 13, *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245 (2013).

29

At trial, the State presented evidence that McDaniel and Christy, ignoring the services and recommendations of the Colorado authorities regarding the infant, left Colorado and arrived at a campsite in the George Washington National Forest with the infant and the other four children. There were little or no baby supplies for the infant, such as baby bottles, diaper bags, powder, or diaper rash cream. On July 4, 2014, at the campsite, or prior thereto, McDaniel was aware that the infant was sick because the infant looked pale and had vomited. However, neither McDaniel nor Christy made any attempt to get medical help. The infant, twenty-six days old and suffering from substantial weight loss, died of malnutrition and dehydration. The infant should have weighed approximately eight pounds but weighed only six pounds.

The deceased infant was buried in a concealed, shallow grave in the National Forest in Hardy County. The location of the deceased infant was not revealed to law enforcement until after Christy and McDaniel, in a stolen vehicle, were pursued and stopped on Interstate 79 on July 5, 2014.

This Court is of the opinion that the evidence at McDaniel's trial was sufficient to sustain the verdicts of the jury.

## V. Conclusion

This Court is of the opinion that McDaniel's assignments of error are without merit, and we affirm her convictions regarding the death of the infant. Moreover, we affirm the sentencing order entered in the Circuit Court of Hardy County on June 23, 2015.[13]

**Affirmed.**

---

[13] Two remaining assignments of error raised by McDaniel are without merit. McDaniel asserts that the circuit court committed error by permitting State Trooper Hartman to refer to a substance found in the back of the stolen vehicle as baby vomit, when the substance was untested and otherwise unknown. Trooper Hartman, however, testified that the substance "appeared" to be baby vomit. Nevertheless, the circuit court overruled the objection and said the jury could decide for itself based upon a photograph submitted by the State of the contents of the Jeep depicting the substance. *See* W.Va. R. Evid. 701 (authorizing the opinion of a lay witness in limited circumstances).

In addition, McDaniel raises an issue of ineffective assistance of counsel. However, as this Court confirmed in syllabus point 9 of *State v. Woodson*, 222 W.Va. 607, 671 S.E.2d 438 (2008), that issue is more appropriately raised in a habeas corpus proceeding, where the record can be more fully developed, than on direct appeal.