# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 18-0283** (Harrison County 17-F-205-3)

**Elizabeth Ladybird Jenkins,**
**Defendant Below, Petitioner**

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Elizabeth Ladybird Jenkins, by counsel David Mirhoseini, appeals the order of the Circuit Court of Harrison County, entered on March 14, 2018, sentencing her to a term of life imprisonment, without mercy, upon her conviction of first-degree felony murder, and a consecutive term of one to five years of imprisonment upon her conviction of conspiracy to commit first-degree robbery. Respondent State of West Virginia appears by counsel Patrick Morrisey and Caleb A. Ellis.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Jenkins quickly became a person of interest in the disappearance of a young woman, Keyairy Wilson, who briefly stayed in the home Ms. Jenkins shared with her boyfriend, Daniel Claude Amsler, in March of 2017. When Ms. Wilson's father reported Ms. Wilson missing, Ms. Jenkins initially denied knowing her whereabouts. When police found Ms. Wilson's body a few days later, however, Ms. Jenkins gave officers a statement describing a plot hatched between her, Mr. Amsler, and their friend Warren Kip Hall to steal Ms. Wilson's illegal drugs. Ms. Jenkins explained to officers that after devising the plan, she and Mr. Amsler arrived at their home, where Mr. Hall was already waiting with Ms. Wilson. She said,

> I had the gun. . . . And I went to lay it down, and it—and I picked it up, and it went off. And I—then I thought, "Oh, s—t." I was like, "Oh, now look what you"—and I did call her a b---h, because I was like, freaking out. I was high. And I was like, "Oh, my G-d. Look what you made me do now." And then I started yelling at Danny. And I put the gun down and Danny took the gun. And then we just started cleaning up the mess.

1

Ms. Jenkins, Mr. Amsler, and Mr. Hall all were indicted on charges of murder and conspiracy to commit first-degree robbery. Mr. Hall entered into a plea agreement with the State. The trials of Ms. Jenkins and Mr. Amsler were severed. Relevant to this appeal, Ms. Jenkins was found guilty of first-degree felony murder and conspiracy to commit first-degree robbery following a jury trial, and she was sentenced to a term of imprisonment for life, without mercy for the murder conviction and a term of one to five years in prison for her conspiracy conviction.

On appeal, Ms. Jenkins asserts six assignments of error. She argues that: (1) the circuit court erred in admitting the statement that Ms. Jenkins gave to police; (2) the circuit court failed to adequately instruct the jury on felony murder; (3) there was insufficient evidence to convict her of felony murder; (4) the circuit court erred in admitting "highly inflammatory gruesome photographs" of the victim; (5) the circuit court erred in permitting into evidence her and Mr. Amsler's out-of-court statements; and (6) she was prejudiced by cumulative error. Due to petitioner's failure to lodge objections below, a number of Ms. Jenkins' assignments of error require that we proceed with consideration of the "plain error" doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). We note other standards of review below.

It is not surprising that Ms. Jenkins' first assignment of error seeks the invalidation of the statement she gave to the police implicating herself beyond question in the shooting of Ms. Wilson.[1] Ms. Jenkins did not file a motion to suppress the statement, but objected to its use at trial during the pretrial hearing, and the circuit court heard evidence about the circumstances surrounding Ms. Jenkins' statement. Ms. Jenkins testified that she was impaired from the days-long use of methamphetamines, crack cocaine, Xanax, other pills, and alcohol when she spoke with police. Detective Mike Walsh, an investigating officer with the Clarksburg Police Department who was present when Ms. Jenkins gave her statement, testified that she was coherent and capably conversant when she gave the statement, and that, when asked, she denied being under the

---

[1] In her argument in support of this assignment of error, Ms. Jenkins argues that she was not promptly presented to a magistrate following her arrest. We have previously held:

> Our prompt presentment rule contained in W. Va.Code, 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered.

Syl. Pt. 2, *State v. Humphrey*, 177 W. Va. 264, 351 S.E.2d 613 (1986). We note that Ms. Jenkins did not argue before the circuit court that she was not promptly presented and we are thus not obligated to consider her argument on this matter. *See State v. Blessing*, 175 W. Va. 132, 133 n.1, 331 S.E.2d 863, 864 n.1 (1985). Nevertheless, we further note that it is evident from the April 1 statement—that is, the one Ms. Jenkins seeks to suppress—that Ms. Jenkins implicated herself almost immediately after police began the interview, and in less than two hours after Mr. Amsler first confirmed that Ms. Jenkins shot Ms. Wilson.

influence of drugs. The circuit court found that Ms. Jenkins' hearing testimony was not credible, and ruled that her confession was voluntarily given. Ms. Jenkins urges us to apply the plain error doctrine and find that the court erred. Ordinarily, if reviewing a properly-filed motion to suppress, we would

> construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). The question before the circuit court was whether Ms. Jenkins was too incapacitated to voluntarily give her self-incriminating statement to Detective Walsh. This inquiry is highly determinative from witness observations and credibility. The circuit court found Detective Walsh's assessment of Ms. Jenkins' acuity credible, and we have no need to look behind the circuit court's determination. Accordingly, we find no clear error.

With respect to Ms. Jenkins' second assignment of error, she argues that the circuit court failed to instruct the jury that it was necessary that Ms. Wilson's death occur "during the course of the commission" of the crime (robbery) supporting the felony murder charge, thus relieving the jury of the burden of considering whether the robbery and the murder were connected. We agree with the State that Ms. Jenkins failed to preserve this assignment of error with a timely objection to the jury charge, and "[t]he general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection." Syl. Pt. 8, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995) (citation omitted). Nevertheless, we find that "the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We specifically note that the circuit court instructed the jury, in part, that felony murder "is committed if a homicide occurs accidentally or otherwise as a result of injuries received in the commission of the attempt to commit" an enumerated felony. There is no error.

In her third assignment of error, Ms. Jenkins argues that there was insufficient evidence to support the felony murder verdict. Specifically, she argues that Ms. Wilson was alive "long after the robbery had been fully completed," and that Ms. Wilson's death was actually the result of the intervening cause of either Ms. Jenkins' or Mr. Amsler's slashing her throat.

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

3

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 1. With no reservation, and with no need for protracted explanation, we find that the reasonable person could easily infer Ms. Wilson's guilt beyond all reasonable doubt where the evidence shows that she participated in a plan to rob the victim, admitted to pulling the trigger of the gun that shot the victim, took the victim's crack cocaine while the victim bled nearby, cleansed the kitchen in which she shot the victim of visible signs of violence, engaged her paramour to assist in driving the victim—albeit while alive—to a remote location where her body would not be quickly found, slashed the victim's wrists and throat, and then returned to the scene of the shooting to riffle through the victim's purse and remove the last vestiges of the dead woman's possessions. There was no intervening cause relieving Ms. Jenkins of the responsibility for this heinous death. There was simply an ongoing, cumulative transaction that culminated in the death of Ms. Wilson and the concealment of her dying body so that Ms. Jenkins and her co-conspirators could smoke their victim's crack cocaine uninterrupted. There is no error.

In her fourth assignment of error, Ms. Jenkins argues that the circuit court admitted, in error, two gruesome photographs of Ms. Wilson's corpse with clear indicia of decomposition. We recently, in evaluating photographic evidence admitted in a case concerning concealment of an infant's body, explained:

> Syllabus point 8 of *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), states: "The admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403 of the West Virginia Rules of Evidence." *Accord* syl. pt. 5, *State v. Waldron*, 218 W.Va. 450, 624 S.E.2d 887 (2005). Rule 401 concerns the test for relevant evidence and Rule 402 concerns the general admissibility of relevant evidence. Rule 403 addresses the exclusion of relevant evidence for prejudice, confusion, waste of time, or other reasons. Syllabus point 10 of *Derr* explains:
>
>> Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.
>
> *Accord* syl. pt. 2, *State v. Copen*, 211 W.Va. 501, 566 S.E.2d 638 (2002).

*State v. McDaniel*, 238 W. Va. 61, 73-74, 792 S.E.2d 72, 84-85 (2016). We agree with the State that the photographs at issue showed Ms. Wilson's body at the scene from which it was recovered, that they showed the wounds inflicted on the victim, and that they depicted the manner in which the body was concealed after it was intentionally carried away from the Amsler/Jenkins home. These photographs were clearly relevant and any prejudice in displaying them to the jury did not

outweigh their probative value. Thus, the circuit court did not abuse its discretion in admitting the photographs.

Ms. Jenkins' fifth assignment of error brings another attempt to excise the spectre of her confessional statement, for which she avers the circuit court failed to give a cautionary instruction, as well as statements and testimony given by her co-conspirators, Mr. Amsler and Mr. Hall. However, Ms. Jenkins' supporting argument is brief and refers only "generally" to these statements and the unavailability of various individuals for testimony, including, Ms. Jenkins argues, "Ms. Wilson because she was dead." While we find these general references insufficient to alert us to the issues Ms. Jenkins wishes us to consider, we also find that Ms. Jenkins' arguments are sufficiently nonspecific that it is not clear that she asked the circuit court for relief in the first instance. The record before us does not provide information concerning when and how Ms. Jenkins objected or otherwise presented this issue to the circuit court. *See* R. App. P. 10(c)(7)(requiring that Ms. Jenkins brief include an argument that "contain[s] appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."); *see also State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) ("[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment."). We are without sufficient description or citation to further consider this assignment of error, and thus find no error.

Ms. Jenkins, without meaningful discussion, avers in her sixth assignment of error that she was prejudiced by cumulative trial error. Relief under the cumulative error doctrine, is available only where "numerous" errors are identified: "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972). As shown in the above discussion, Ms. Jenkins has identified no trial error. Without error, there is no cumulative error, and, thus, no relief.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5