# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0056** (Harrison County 19-F-71-2)

**Timothy Rock,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Timothy Rock, by counsel Michael B. Hissam, J. Zak Ritchie, and Max C. Gottlieb, appeals the Circuit Court of Harrison County's December 16, 2019, order sentencing him to concurrent terms of not less than one nor more than ten years of incarceration for each of his seventeen falsifying accounts convictions and to not less than one nor more than five years of incarceration for his conspiracy conviction, which was ordered to be served consecutively to the other sentences. Respondent the State of West Virginia, by counsel Mary Beth Niday, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 8, 2019, petitioner and Deputy Steven Snyder were indicted on twenty-seven counts of falsifying accounts and one count of conspiracy to commit a felony. Petitioner and Deputy Snyder were both former deputies with the Harrison County Sheriff's Office assigned to that office's Street Crimes and Drug ("SCAD") Unit. In that capacity, they utilized confidential informants ("CIs") to make controlled purchases of drugs. Petitioner primarily managed the CIs.

The charges against petitioner and Deputy Snyder concerned their falsification of vouchers documenting payments made during controlled drug buys in 2016, including payments made to CIs in exchange for their assistance in making controlled drug buys. The officers were required to complete vouchers documenting expenditures each day; however, the officers frequently failed to timely complete and submit them, which necessitated meeting to complete the vouchers in bulk for prior controlled drug buys. The officers both created new vouchers and modified existing vouchers so that the sums reflected on the vouchers corresponded to the sums

1

obtained from the Harrison County Commission to make controlled drug buys, which allowed the deputies to obscure the fact that government funds were unaccounted for from the SCAD Unit's buy account. It was alleged that the CIs did not receive the amounts reflected on the vouchers. It was further alleged that petitioner provided the CIs heroin in exchange for their service, in lieu of money.

Petitioner's trial commenced on August 20, 2019. Various witnesses testified on the State's behalf, including other law enforcement officers and several of the CIs who worked for petitioner.[1] Due to the posture of this case on appeal and the assignments of error raised, however, an exhaustive recitation of the evidence introduced is unnecessary. Of relevance to the issues on appeal, we note that petitioner objected at trial to evidence of his provision of drugs to his CIs for their service. Petitioner argued that the evidence constituted Rule 404(b) evidence and that its "prejudice clearly outweighs any probative value" under Rule 403.[2] The State explained that the receipt of drugs was "exactly what made these vouchers false, . . . it's not 404(b), it's not another event, it's not a separate event, it's not a separate act." The court overruled petitioner's objection, finding that, "[w]ell, clearly it's prejudicial. But the [c]ourt believes that it is part of the Res gestae. . . . [I]t's part and parcel of the again, the falsifying accounts."[3]

At the conclusion of petitioner's trial, the jury found him guilty of seventeen counts of falsifying accounts and one count of conspiracy. The jury acquitted him of the remaining ten counts of falsifying accounts.

In addition to the investigation at the state level giving rise to petitioner's state charges and convictions, there was a federal investigation that culminated in a September 4, 2019, federal indictment charging petitioner with four counts of distributing heroin. Ultimately, petitioner was convicted of each of those four counts.

---

[1] Five days before petitioner's trial, his co-defendant Deputy Snyder entered into a plea agreement with the State, under which he agreed to plead guilty to two counts of falsifying accounts and one count of conspiracy. Deputy Snyder also agreed to testify at petitioner's trial.

[2] Rule 404(b) of the West Virginia Rules of Evidence prohibits the use of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The Rule provides that such evidence may be admissible for other enumerated purposes. *See id.* Rule 403 of the West Virginia Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[3] Petitioner also sought to "suppress" this evidence during a pre-trial hearing, but the court denied his motion.

Petitioner filed motions for judgment of acquittal and a new trial ("post-trial motions") in the circuit court on September 9, 2019.[4] Although petitioner raised a number of grounds in his post-trial motions in support of the relief sought, on appeal he continues to assign as error only the court's admission of the evidence that he supplied drugs to his CIs, which he maintained was in violation of Rules 403 and 404 of the West Virginia Rules of Evidence.

On November 15, 2019, petitioner filed a "Supplemental Memorandum in Support of the Post Trial Motions of the Defendant; Reply in Support of Post Trial Motions of the Defendant; and, Motion to Continue Hearing Regarding Post Trial Motions and Sentencing" ("supplemental post-trial motions"). Petitioner asserted that he was entitled to a new trial on all counts due to the State's failure to produce exculpatory evidence that "was discovered as a result of the federal trial of the defendant ending on November 14, 2019." Petitioner asserted that the federal action "involves the same issues presented to the jury in the" instant action and that the Harrison County Sheriff's Office and the Federal Bureau of Investigation worked in tandem in investigating petitioner. Petitioner further noted that three "significant" witnesses testified in both the federal and state proceedings, namely, two CIs and Deputy Snyder. Petitioner stated that, upon information and belief, an audio recording of a conversation between the two CIs existed in which one CI advised the other that "they need to get their stories straight," that the CI "needed assurances that [the other CI] was on his team," and that Deputy Snyder had informed the CI that he and the other CI "could get millions in a lawsuit."[5] But due to a protective order that had been entered in the federal action, petitioner's counsel did not possess, nor had he even heard, the recording.

Petitioner listed additional audio recordings, video recordings, and messages that he "believed to exist" but that were not produced. Aside from the supposed general content of the phone call between the CIs, petitioner did not describe the expected significance of any other piece of evidence he identified. In fact, petitioner acknowledged that "[b]ased upon the protective order in the federal action it is unclear the extent to which the various information . . . disclosed in the federal action [is] favorable, exculpatory or impeaching," and he was "preclude[d] . . . from articulating the materiality of each item." Nevertheless, he argued that the State was obligated to produce the evidence as impeachment or exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982).[6]

---

[4] Petitioner also filed motions for arrest of judgment and for stay of execution and relief pending appellate review.

[5] At least one CI filed a civil suit against petitioner and the Harrison County Sheriff's Office. Petitioner represents that the suit "has been resolved."

[6] In *Brady*, the Supreme Court of the United States held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. We held, in syllabus point 4 of *Hatfield*, that the suppression of favorable evidence likewise violates the West Virginia Constitution: "A prosecution that

(continued . . .)

3

The parties appeared for a hearing on post-trial motions and sentencing on November 18, 2019. Petitioner argued his post-trial motions and supplemental post-trial motions but conceded that he could not "tell the [c]ourt right now if [the identified evidence] would make a difference because we haven't had the opportunity to review it."

In addressing petitioner's claims, the court began by noting that petitioner's supplemental post-trial motions were "built upon speculation upon speculation upon speculation." It also stated that

> the first hurdle that the [c]ourt would have to address is whether or not this state police officer had access to all that information that's believed to be in the possession of the federal government. There's no evidence that he did or—and withheld that deliberately or even incidentally to these proceedings. And it seems to me that given the fact that it's truly speculative at this point, the [c]ourt believes there is not sufficient evidence to justify continuing the posttrial practice at this point and then if appropriate sentencing.

Finding that *Brady* and *Hatfield* were "not violated by the State under these circumstances and in this case," the court denied petitioner's post-trial motions and supplemental post-trial motions. The court then proceeded to sentence petitioner to not less than one nor more than ten years of incarceration for each of petitioner's seventeen falsifying accounts convictions, which were to be served concurrently with one another, and to not less than one nor more than five years for petitioner's conspiracy conviction, which was ordered to be served consecutively to the other sentences. The court entered its sentencing order memorializing these rulings on December 16, 2019.[7] It is from this order that petitioner appeals.

After filing his appeal with this Court, however, petitioner filed in the circuit court a "Motion of the Defendant, Timothy Rock, for Rehearing and Reconsideration of the Denial of the Motions [sic] Judgment of Acquittal; and for a New Trial" ("motion for reconsideration") on February 5, 2020. Petitioner explained that the federal court protective order had been modified to allow him and his counsel access to and use of the information produced in the federal criminal proceeding. Recognizing that the court had denied petitioner a new trial due, in part, to the speculative nature of his supplemental post-trial motions raising the *Brady/Hatfield* issue,

---

withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." 169 W. Va. at 192, 286 S.E.2d at 404.

[7] In its order, the court summarized its findings on the *Brady/Hatfield* issue by stating that it "found that the evidence presented by the State was proper in relation to the offenses charged in the indictment." The court also "accepted the State's representation that it had provided all evidence in its possession to counsel for defendant and would not have had access to federal grand jury records or additional evidence utilized in the federal prosecution that resulted in the defendant's conviction."

petitioner attempted to expand upon that issue by listing twenty-seven pieces of evidence, the withholding of which he claimed violated his right to due process under *Brady* and *Hatfield*. But the items were listed without accompanying argument or other explanation as to the evidence's favorability or materiality, although he did "incorporate[] . . . the legal authority contained within the prior motion."

The State's response highlighted the "blanket assertions" made by petitioner and the absence of any explanation of the exculpatory nature of the identified documents. "Without such a showing," the State said, "there exists no specific support for the assertion that the defendant should be granted a rehearing" on petitioner's previously denied post-trial motions and supplemental post-trial motions.

On February 11, 2020, petitioner filed a "Consolidated Reply of the Defendant, Timothy Rock, in Support of the Motion of the Defendant to Extend Stay of Execution and Continue Post-Conviction Bail and Motion of the Defendant for Rehearing and Reconsideration of the Denial of Motions for Judgment of Acquittal and for a New Trial" ("consolidated reply"). In his consolidated reply, petitioner offered some explanation of the claimed impeachment or exculpatory value of the allegedly withheld evidence. For example, petitioner stated that statements made by one of his CIs during a recorded interview do not match the statements attributed to the CI in a written report documenting that interview. Petitioner also identified a memorandum naming another "potential witness" who possessed an "audio file regarding the recording between" the two CIs. Other documents identified by petitioner purportedly established a "lack of any chain of custody" for certain evidence described during his trial, and he again referenced the taped telephone call between two CIs. Petitioner concluded that "[t]he foregoing highlight[s] the significant violations of the obligations of the prosecution to produce *Brady* material which undermined the constitutional rights of the defendant. Without question, this information was known to the prosecution and should have been produced."

The court denied petitioner's motion for reconsideration on February 12, 2020, finding that petitioner's motion "fails to advance any particular relevancy argument on [his] behalf," that the motion

> makes no specific identification or citation to trial transcript records connecting the referenced [e]xhibits from his federal criminal proceedings to proceedings herein that he believes reflect contradictory statements or inconsistencies to such extent that would rise to the level of *Brady* violations and the denial of his due process in his state criminal proceedings,

and that petitioner "does not substantively support his assertion that he should be granted a rehearing on his previously denied motions."[8]

---

[8] The court also admonished petitioner for filing a reply when one "was neither authorized nor contemplated by" the court's briefing schedule and because it was "no[t] so much in response to any 'newly raised matters' by the State in its [r]esponse as it [was] a supplemental

(continued . . .)

5

Nevertheless, the court conducted an in-camera review of the exhibits and "detected nothing contained therein to be of any exculpatory nature.[9] In actuality, such review revealed information and matters that this Court deemed as being inculpatory in nature." The court concluded that petitioner's motion was "facially deficient and lacking any substantive merit or controlling authority upon which his requested relief should be granted."

In his appeal to this Court, petitioner raises two assignments of error related to the circuit court's denial of his motion for a new trial. In his first, he argues that the circuit court erred in denying his motion due to the State's failure to produce all material exculpatory and impeachment evidence of which it was aware, in violation of *Brady* and *Hatfield*. In his second assignment of error, petitioner argues that the circuit court erred in concluding that his supplying drugs to the CIs was part of the res gestae. Petitioner claims that this evidence should have been evaluated under Rule 404(b) of the West Virginia Rules of Evidence, and he also argues that Rule 403 precluded its admission.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Before delving into the particulars of petitioner's arguments, we must outline the scope of our review of petitioner's assignments of error. Petitioner raises arguments on appeal that he did not raise below. In particular, petitioner argues on appeal that certain evidence was withheld in violation of *Brady*/*Hatfield* that he did not identify below as violative of *Brady*/*Hatfield*. Conversely, petitioner no longer takes issue with much of the evidence that he claimed below violated *Brady*/*Hatfield*.[10] As we have repeatedly reminded litigants, "[t]his Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered [for] the first time on appeal." *State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009) (citation omitted). "It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the

---

memorandum to his original [m]otion . . . containing argument and legal authority that should have been put forth [initially]."

[9] The court was unable to review the exhibits provided on an electronic storage device, though, which included the telephone call between the CIs. The court stated that upon attempting to access the files on the storage device, it was alerted that the "device contained potentially harmful information and/or was not allowed further access due to online and computer security."

[10] Petitioner has obtained new counsel to prosecute his appeal.

parties intend to rely." *State v. Trail*, 236 W. Va. 167, 185, 778 S.E.2d 616, 634 (2015) (citation omitted).

More problematic, however, is the fact that petitioner raises issues related to the evidence obtained from the federal court proceeding, and he challenges the circuit court's rulings on his motion for reconsideration, which was predicated on that evidence. Petitioner filed his appeal from the circuit court's sentencing order with this Court in January of 2020. From the point of filing forward, the circuit court was without jurisdiction in petitioner's case, including over the issues raised in his motion for reconsideration and consolidated reply. "Once this Court takes jurisdiction of a matter pending before a circuit court, the circuit court is without jurisdiction to enter further orders in the matter except by specific leave of this Court." Syl. Pt. 3, *Fenton v. Miller*, 182 W. Va. 731, 391 S.E.2d 744 (1990); *see also Luborsky v. Carroll*, Nos. 15-0787 & 16-0329, 2017 WL 1293991, *4 n.9 (W. Va. Apr. 5, 2017)(memorandum decision) ("Procedurally, we note that, because this Court docketed Mr. Luborsky's appeal of the July 15, 2015, order, no further proceedings should have occurred in this matter below without leave of this Court. . . . Thus, we remind the bench and bar that, in general, circuit courts lack jurisdiction to issue rulings while a proper appeal is pending before this Court."). Because the circuit court lacked jurisdiction to consider petitioner's motion for reconsideration and consolidated reply, its rulings on the issues raised in those filings are void and not properly before this Court for review. *See State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 346, 801 S.E.2d 216, 224 (2017) ("[T]he urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void."). Accordingly, this Court may address the propriety of the circuit court's denial of a new trial based on allegedly withheld evidence, but we may only consider that issue as it was presented to and ruled upon by the circuit court in petitioner's post-trial motions and supplemental post-trial motions, i.e., before the circuit court was divested of jurisdiction.

After appropriately narrowing the scope of his appeal, the arguments raised by petitioner that can be considered by this Court concerning the *Brady/Hatfield* issue include his claim that the court erroneously applied an "access" standard in concluding that no *Brady/Hatfield* violation had been established. Petitioner also challenges the court's findings that the evidence's effect was speculative, and he claims that the court improperly limited its assessment to only state law enforcement officers.

To have established a due process violation under *Brady* and *Hatfield*, petitioner needed to have shown three things: "(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, in part, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). In addressing this third component, we have said that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 32, 650 S.E.2d at 131 (citation omitted).

We find no error in the circuit court's ruling that petitioner failed to demonstrate that he was entitled to a new trial under *Brady* and *Hatfield*. Simply put, petitioner failed to so much as minimally address his supposed entitlement to a new trial for the alleged *Brady*/*Hatfield* violation, let alone meet his burden of establishing one.[11] Petitioner offered only the blanket assertion that the identified evidence was favorable as exculpatory or impeachment evidence, but he failed to explain how, and he further failed to explain how the identified evidence prejudiced his defense at trial. Indeed, petitioner acknowledged in his supplemental post-trial motions and at the hearing on those motions that he could not meet his burden, conceding that he did not know whether the evidence was favorable and could not articulate its materiality. Because petitioner's merely speculative and undeveloped bases offered in support of the claimed *Brady*/*Hatfield* violation did not establish such a violation, he was not entitled to a new trial on this ground. *See State v. Harris*, 226 W. Va. 471, 476, 702 S.E.2d 603, 608 (2010) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.") (citation omitted).

In support of his second assignment of error, concerning the evidence that he supplied drugs to his CIs, petitioner argues that the circuit court "misinterpret[ed] the legal bounds" of res gestae by failing to assess whether the evidence was "reasonably necessary" for explaining the falsifying accounts charges. *See* Syl. Pt. 1, *State v. Spicer*, 162 W. Va. 127, 245 S.E.2d 922 (1978) ("Other criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose."). Petitioner argues that all that was reasonably necessary to explain these charges was the testimony from the CIs that they did not receive the amount reflected on the vouchers. Whether they received drugs "is logically not necessary to the assessment of whether the cash was paid or not," petitioner contends. Because this evidence was not reasonably necessary to explain the charges, petitioner asserts it was not res gestae. Therefore, petitioner argues, the circuit court erred in not following the necessary procedures for admitting evidence under Rule 404(b) of the West Virginia Rules of Evidence set forth in Syllabus Point 2 of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994). Petitioner also argues that the evidence's minimal probative value was substantially outweighed by its prejudicial value because the State was permitted to portray petitioner "as a 'dirty cop' who gave drugs to addicts." For that reason, he argues that the evidence should have been excluded under Rule 403 of the West Virginia Rules of Evidence.

Our review of this assignment of error is for an abuse of discretion. *See* Syl. Pt. 3, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013) ("A trial court's evidentiary rulings, as well as

---

[11] To the extent the circuit court's finding that petitioner's supplemental post-trial motions were "built upon speculation upon speculation upon speculation" does not amount to a ruling that petitioner failed to meet his burden, we reiterate that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

8

its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.") (citation omitted).

We have explained that "'[o]ther act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Id.* at 721, 742 S.E.2d at 137 (citation omitted). Further,

> [o]ne of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'" or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . . ' (and is thus) part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "(t)here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae." . . . "(T)he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge."

*Id.* at 721-22, 742 S.E.2d at 137-38 (citations omitted). But "[o]ther criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." *Spicer*, 162 W. Va. at 127-28, 245 S.E.2d at 924, syl. pt. 1.

The circuit court correctly determined that the evidence that petitioner paid his CIs in drugs was intrinsic to the crimes charged. The vouchers were false partly *because* petitioner paid the CIs in drugs rather than the cash amounts reflected on the vouchers. In other words, petitioner's payment in drugs was inextricably intertwined with and explanatory of his falsification of the vouchers. The evidence likewise furnished the context for the crime.

We further find that the admission of this evidence does not run afoul of our pronouncements in *Spicer*. In *Spicer*, the defendant was charged only with armed robbery following his alleged abduction at knifepoint and rape of his victim, during which he took $3 from the victim's purse. 162 W. Va. at 128, 245 S.E.2d at 924. At trial, which resulted in the defendant's conviction, the circuit court permitted the State to admit evidence from doctors who confirmed that the victim had engaged in intercourse within the time period of the alleged, but uncharged, rape. *Id.* at 130-31, 245 S.E.2d at 925. On appeal, we found that the doctors' testimony went too far, that it should not have been admitted, and that "the prosecutor conducted the trial from beginning to end as if it were a trial for rape." *Id.* at 133, 245 S.E.2d at 926. Against this backdrop, we held that "the prosecution was not at liberty to introduce other crime evidence beyond that necessary to explain or prove the crime charged in the indictment." *Id.*

To be clear, we recognized that in proving the crime charged "other offenses may come to light incidentally." *Id.* at 133, 245 S.E.2d at 927. The problem arises, though, "when the prosecution devotes excessive trial time to this type of 'background' material[;] it runs the risk of trespassing into the impermissible area and jeopardizing any resulting conviction." *Id.* at 133-34, 245 S.E.2d at 927. The rape evidence in *Spicer* "was admitted indiscriminately, took up much of the trial time, and created a substantial danger of prejudice. This combined with the remarks of the prosecution, particularly in closing argument, was prejudicial and denied him the fundamental right of a fair trial." *Id.* at 134, 245 S.E.2d at 927.

Petitioner does not argue that evidence of his payment to his CIs in drugs dominated the trial, and our review of the trial transcript reveals that such was not the case. Rather, only that evidence reasonably necessary to explain how petitioner falsified the vouchers and prove that he did falsify the vouchers was introduced. And because this evidence was properly admitted as intrinsic to the crime charged, it does not fall within the purview of Rule 404(b), and the circuit court did not need to comply with the procedures for determining its admissibility set forth in *McGinnis*. *See Harris*, 230 W. Va. at 722, 742 S.E.2d at 138 ("This Court has consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b).") (citation omitted).

Petitioner's challenge to the evidence under Rule 403 is likewise without merit. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 seeks to guard against "jury *misuse* of the evidence." *State v. Guthrie*, 194 W. Va. 657, 683, 461 S.E.2d 163, 189 (1995).

> The mission of Rule 403 is to eliminate the obvious instance in which a jury will convict because its passions are aroused rather than motivated by the persuasive force of the probative evidence. Stated another way, the concern is with any pronounced tendency of evidence to lead the jury, often for emotional reasons, to desire to convict a defendant for reasons other than the defendant's guilt.

*Id.* at 682-83, 461 S.E.2d at 188-89.

In conducting the balancing required under this rule, a trial court "enjoys broad discretion." Syl. Pt. 4, in part, *State v. McDaniel*, 238 W. Va. 61, 792 S.E.2d 72 (2016) (citation omitted). "The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing a clear abuse." *Id.* (citation omitted).

The circuit court did not clearly abuse its discretion in conducing the balancing required by Rule 403. "[T]o be probative, evidence must be 'relevant' under Rule 401, that is, it must tend to make an issue in the case more or less likely than would be so without the evidence." *Guthrie*, 194 W. Va. at 681, 461 S.E.2d at 187. Here, the evidence was clearly relevant in that evidence that the CIs were paid in drugs rather than cash tended to make it more likely that the vouchers, reflecting cash payments, were false. Further, this probative value was not substantially outweighed by a danger of unfair prejudice because admission of the evidence did not present an

opportunity for the jury to convict petitioner for reasons other than his guilt. To the contrary, the evidence bore directly on his guilt.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice Tim Armstead

11